IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| THOMAS BANKS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. |
| RAPID GLOBAL BUSINESS | § | |
| SOLUTIONS, INC., a Michigan | § | |
| corporation; and FORD MOTOR | § | |
| COMPANY, a Delaware corporation, | § | |
| Defendants. | § | |

## COMPLAINT

**NOW COMES** Plaintiff, Thomas Banks ("Banks" or "Plaintiff"), by and through his attorneys, Rickard, Denney, Garno & Associates and Liberty Institute[1], and for his Complaint as against Defendants Rapid Global Business Solutions, Inc. ("RGBSI"), a Michigan corporation and Ford Motor Company ("Ford"), a Delaware Corporation (collectively, the "Defendants") states as follows:

### Introduction

1.     Plaintiff Thomas Banks, a career engineer, worked for major automotive manufacturers and suppliers for over 30 years, the bulk of his career. Mr. Banks worked at Ford Motor Company, on assignment with the company RGBSI, for three and a half years. During that time, Mr. Banks received an email

---

[1] Attorneys Hiram Sasser and Cleve Doty from Liberty Institute are applying for admission in this district and, in compliance with court rules, will make their official appearance afterwards.

with an article about Ford's promotion of particular viewpoints, which included a box inviting Ford employees to comment upon the article. Mr. Banks responded with a short, candid comment addressing "Ford Motor" based upon his concern as a Christian in the workplace. He informed Ford that the article's subject "should not be a topic for an automotive manufacturer" since it is "disruptive to the workplace" and offensive to Christians. Banks expressed a concern that employees may be offended due to their religion, and Christians in particular. Ford Human Resources responded to his comment – and to this comment alone – by summarily terminating Banks. The week Banks was fired, RGBSI cited only one provision of their employment policy, a provision that they now admit is inapplicable to Banks. Neither company paid any heed to Mr. Banks' beliefs or his complaint.

### Nature of Lawsuit

2.      This is a civil action whereby Plaintiff Thomas Banks, a male person, seeks compensatory damages, punitive damages, and attorneys fees against Defendants for religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq.;* the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and the Elliott-Larsen Civil Rights Act of 1976 (MCL 37.2202 *et seq.,* MCL 37.2701, MCL 37.2801, and MCL 37.2802). An actual controversy exists between the parties involving violations of Title VII of the federal Civil Rights Act of 1964 and the Elliott-Larsen Civil Rights Act of 1976.

## Jurisdiction and Venue

3.     This action arises under jurisdiction of this Court and is proper under federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff is pursuing a violation of Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1991, 42 U.S.C. § 1981a, involving religious discrimination and retaliation for reporting an alleged violation of the applicable Federal Civil Rights Acts such that jurisdiction is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331. Supplemental jurisdiction of this Court is proper for Counts III and IV (state civil rights complaints) under 28 U.S.C. § 1367.

4.     This court is authorized to answer Banks's prayer for relief requesting compensation, wages, punitive damages, and costs, including reasonable attorney fees under 42 U.S.C. § 2000e-5(k), MCL 37.2801, and MCL 37.2802 (although the MCL provisions do not provide punitive damages).

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) because Banks's prior employment with Defendants RGBSI and Ford, before his termination, and the violations of federal and state law in question took place in Wayne County, Michigan. RGBSI's principal place of residence and business and its Resident Agent are located in Oakland County, Michigan. RGBSI's state of incorporation is Michigan. Ford Motor Company's principal place of residence and

business is in Wayne County, Michigan, and its Resident Agent is located in Oakland County, Michigan. Ford Motor Company's state of incorporation is Delaware.

6.      On January 28, 2015, Banks filed a claim with the Equal Employment Opportunity Commission ("EEOC") for Defendants' violation of the federal Civil Rights law (Title VII of the Civil Rights Act of 1964), in response to which the EEOC declined to pursue the claims and issued to Plaintiff a "right to sue" letter on April 13, 2015, which is attached hereto as **Exhibit 1**.

## General Allegations

7.      Plaintiff Thomas Banks is a committed Christian and has, at all times pertinent to this Complaint, maintained sincerely held religious beliefs regarding sexuality and human flourishing.

8.      Banks worked for RGBSI, at Ford's Dearborn plant, as an employee from March 4, 2011, until he was fired on August 4, 2014. Banks was an employee of RGBSI for employment law purposes. He was also an employee of Ford Motor Company for employment law purposes.

9.      RGBSI is a Michigan corporation with its principal place of business in Oakland County, Michigan, and that does business in Oakland County, Michigan, and Wayne County, Michigan. During all times pertinent to this Complaint, RGBSI was an employer who employed over fifteen employees for

each working day in each of twenty or more calendar weeks in the current and preceding year and each year pertinent to this Complaint and is engaged in an industry affecting interstate commerce.

10.    Ford is a Delaware corporation with its principal place of business in Wayne County, Michigan, and that does business in Wayne County, Michigan. During all times pertinent to this Complaint, Ford was an employer who employed over fifteen employees, for each working day in each of twenty or more calendar weeks in the current and preceding year and each year pertinent to this Complaint and is engaged in an industry affecting interstate commerce.

11.    Kelsey Rossi was employed as a supervisor at RGBSI, and Rossi possessed authority to inflict and impose adverse, tangible employment consequences upon employees under her supervision, including termination of employment at RGBSI.

12.    Rona Smart was employed as a supervisor at Ford, and Smart possessed authority to inflict and impose adverse, tangible employment consequences upon employees under her supervision, including termination of employment at Ford.

13.    Banks has no objection to workplace inclusiveness policies in general and supports a diverse and inclusive workplace. He has, in fact, worked in a variety of diverse workplaces for more than three decades. He is happy to work with any

individual employed at Ford. Moreover, Banks appreciates the variety of opinions and perspectives that a diverse workplace and a diverse world bring. Banks believes all individuals have human rights that, like the Declaration of Independence declares, are "unalienable rights" endowed upon them "by their Creator". Banks respects others, even those who disagree with him, as he has throughout his career, and merely hopes for the same respect in turn.

14.   On July 21, 2014, an article celebrating Ford's Gay, Lesbian or Bisexual Employees ("GLOBE") was posted on the Ford intranet (the "Article"), expressing support for GLOBE's efforts to make Ford a more pro-LGBT environment. (LGBT is defined as "lesbian, gay, bisexual, and transgender.") The intranet page contained a text box below the article inviting employees to respond with their comments about the Article.

15.   On or about July 23, 2014, Banks reviewed the Article and concluded that the message of the Article "is disruptive to the workplace and is an assault on Christians and morality" and that Ford's policy on this issue would have detrimental effects on members of groups with sincerely-held religious beliefs that are opposed to same-sex sexual conduct, such as Christians, and specifically including Banks. Banks opined that Ford, as a car company, should focus on cars, and making cars, rather than promoting visions of sexuality that are offensive to religious employees, such as Christians. Banks, aware of Biblical statements as

well as scientific research on life expectancy from the Centers for Disease Control, among others, complained that religious employees find the Article offensive. Banks posted a comment on the page with the Article outlining this position, and directed his comment explicitly to Ford. Banks addressed Ford and never stated that anyone should be unwelcome at Ford, nor does he believe so; he merely complained that the promotion of certain sexual activities in the workplace offends religious employees.

16.    A true and correct copy of Banks' comment is attached as **Exhibit 2**, which is incorporated by reference. In the comment, Banks said: "For this Ford Motor should be thoroughly ashamed. Endorsing and promoting sodomy is of benefit to no one. This topic is disruptive to the workplace and is an assault on Christians and morality, as well as antithetical to our design and our survival. Immoral sexual conduct should not be a topic for an automotive manufacturer to endorse or promote. And yes—this is historic—but not in a good way. Never in the history of mankind has a culture survived that promotes sodomy. Heterosexual behavior creates life—homosexual behavior leads to death."

17.    On Wednesday, July 30, 2014, Smart became aware of Banks' comment to Ford Motor Company and met with Rossi. At this meeting, Smart and Rossi planned to confirm that Banks had posted the comment. If Banks admitted to posting the comment, Smart and Rossi apparently planned to terminate his

employment because they disapproved of his religious beliefs. Smart sent an email to Rossi late on July 30 to ensure that Rossi would not tip Banks off to the reason for their meeting. On Thursday, July 31, 2014, Smart sent Banks an email requesting a meeting on Friday, August 1, 2014, but Banks was on vacation that Friday so the meeting did not take place until Monday, August 4, 2014. According to Rossi's testimony, and RGBSI's emails, Smart asked Rossi not to reveal to Banks the subject of the meeting; Rossi agreed.

18.   A true and correct copy of these emails is attached as **Exhibit 3** and incorporated by reference.

19.   A true and correct copy of excerpts of sworn testimony from Kelsey Rossi is attached as **Exhibit 4** and incorporated by reference.

20.   At the meeting on Monday, August 4, 2014, Smart and Rossi asked Banks whether he had posted the comment in question to the Article. Banks affirmed that he did. Smart and Rossi gave Banks a copy of Ford's Anti-harassment Directive B110 and accused of violating the policy, and that they would contact him again after the company reviewed the situation further. They gave Banks no indication that he would be subject to summary termination.

21.   Under oath, RGBSI representative Rossi testified that RGBSI's policy was to protect its religious employees from being discriminated against or punished for their religious beliefs.  She also testified that RGBSI promised to

protect employees regardless of whether an employee's religious convictions were popular. However, she also testified that Banks (and presumably all employees) would only be protected if they "follow our standards for coming to us," which she explained meant coming to "RGBSI HR [human resources] and [RGBSI]," otherwise, he would receive no protection as a religious employee, even though RGBSI was aware his comment "referenced Christianity, with being an assault on Christianity."

22.    That night, Rossi notified Banks via voicemail that he was terminated from Ford and should not return to work.

23.    RGBSI, through Rossi, provided sworn testimony that RGBSI did not automatically terminate Banks as a result. Instead, they had the option to maintain his employment and reassign him or retask him. But, she and her "supervisor at RGBSI also did [sic] decided to end his employment at RGBSI as well."

24.    Instead, RGBSI informed Banks by email that he was also separately terminated from RGBSI for violating a policy that, by its terms, only prohibited discrimination on the basis of sexual orientation if the actions took place in New York City, New York. None of the events relevant to this Complaint took place in New York City, New York. RGBSI subsequently admitted, in sworn testimony, that its policy regarding sexual orientation only applies in New York City, New York, but that RGBSI "did not notice" that when terminating Banks.

25.     RGBSI also admitted, in sworn testimony, that Banks never violated its employment policy regarding sexual orientation.

26.     RGBSI never identified any specific provision of any RGBSI policy as having been violated by Banks prior to his termination. As far as Banks and Rossi are aware, according to Rossi's sworn testimony, no complaints from any persons other than Ford's human resources department were ever made. Banks was given no warnings or offered any options short of termination.

27.     No prior disciplinary actions had ever been taken against Banks, and there were no other incidents or any other factors that played a role in the decision to terminate Banks at either Ford or RGBSI aside from his expression of his identity and complaint as a Christian due to his religious beliefs, even though a person's religion is a protected class under federal and state anti-discrimination laws.

## COUNT I

### Religious Discrimination under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991

28.     Plaintiff incorporates by reference paragraphs one (1) through twenty-seven (27) as if repeated herein verbatim.

29.     Smart possessed, through Ford, the authority as a member of the human resources department over Banks to effect tangible employment

consequences with respect to Banks, and Ford is vicariously liable for Smart's religious discrimination and retaliation against Banks.

30.     Rossi possessed, through RGBSI, the authority as a supervisor over Banks to effect tangible employment consequences with respect to Banks, and RGBSI is vicariously liable for Rossi's religious discrimination and retaliation against Banks.

31.     Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and the Civil Rights Act of 1991, 42 U.S.C. § 1981a, because it is unlawful to discriminate against employees with respect to the corporation's terms and privileges of employment because of a person's religion. Defendants also violated 42 U.S.C. § 2000e-2(m) because they were motivated by Banks' religion when they each terminated him.

32.     Defendants discriminated against Plaintiff because they discharged him based on his religion, including his religious beliefs and/or religious observances and practices.

33.     Ford, through Smart, and RGBSI, through Rossi, discriminated against Banks because of his religion when they chose to terminate him for providing the requested comment to the Article in accordance with Banks' sincerely held religious belief. Ford discriminated against Banks as well as

retaliated against him for making a complaint by automatically terminating him, rather than ever addressing, inquiring about, or considering his complaint.

34.    Ford also failed to accommodate Banks, despite awareness that he may need an accommodation, contrary to *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. ___, 2015 U.S. LEXIS 3718 (June 2, 2015) (holding that an employer violates Title VII when it takes action against an employee despite knowledge of the employee's potential need for an accommodation, regardless of whether or not an accommodation was requested).

35.    Ford, through Smart, and RGBSI, through Rossi, inflicted adverse, tangible employment consequences on Banks, including but not limited to terminating his employment, failing to give him any warnings prior to termination, and failing to take any steps to attempt to accommodate his religious identity.  In sworn testimony, Rossi admitted that she knew Banks referred to his religion and complained of "an assault" on his beliefs and his religion.

36.    As a direct and proximate cause of Defendants' violations of the law, Banks suffered damages, including but not limited to lost wages, physical anguish, mental anguish, emotional distress, shame, anxiety, humiliation, and other damages.

37.    Because Ford, through Smart, and RGBSI, through Rossi, acted intentionally out of malice or reckless disregard of Banks's federally protected

rights pursuant to 42 U.S.C. § 2000e-5 and 42 U.S.C. § 1981a, Banks is entitled to compensation for compensatory and punitive damages against Defendants in order to fully compensate him for the damages he has so wrongfully incurred, plus his attorney fees pursuant to 42 U.S.C. § 2000e-5(h).

### Relief Requested

**WHEREFORE,** Plaintiff requests that judgment be entered in his favor and against Defendants in an amount sufficient to compensate him for his damages so wrongfully incurred plus attorneys fees.

### COUNT II
### Violation of Anti-Retaliation Provisions of 42 U.S.C. § 2000e–3(a)

38.   Plaintiff incorporates by reference paragraphs one (1) through thirty-seven (37) as if repeated herein verbatim.

39.   Ford and RGBSI violated the anti-retaliation provisions of 42 U.S.C. § 2000e-3(a) because, after Banks posted his comment explaining that their Article constituted an assault on the religious identity of Banks and other members religious groups with similar beliefs, Defendants retaliated against Banks by stereotyping him based upon his comments and/or their perception about his religion, and summarily terminating him.

40.   In its retaliation against Banks, Defendants acted intentionally to retaliate against Banks out of malice or reckless indifference to Banks's federally protected rights.

41.     As a direct and proximate result of Defendants' willful retaliation, Banks suffered damages, including but not limited to lost wages, mental anguish, emotional distress, humiliation, shame, anxiety, and other damages.

42.     Pursuant to 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981a, Plaintiff seeks compensatory damages, punitive damages, and reasonable attorneys fees.

### Relief Requested

**WHEREFORE,** Plaintiff requests that judgment be entered in his favor and against Defendants in an amount sufficient to compensate him for his damages so wrongfully incurred plus attorneys fees.

### COUNT III
### Violation of Anti-Discrimination Provisions of MCL 37.2202

43.     Plaintiff incorporates by reference paragraphs one (1) through forty-two (42) as if repeated herein verbatim.

44.     Defendants violated the anti-discrimination provisions of MCL 37.2202 of the Michigan Elliott-Larsen Civil Rights Act of 1976 by terminating Banks because of his Christian religious convictions.

45.     As a direct and proximate result of Defendants' willful discrimination, Banks suffered damages, including but not limited to lost wages, mental anguish, and emotional distress, humiliation, shame, anxiety, and other damages.

46.     Pursuant to MCL 37.2202 *et seq.,* MCL 37.2801, and MCL 37.2802, Plaintiff seeks compensatory damages and reasonable attorney fees.

### Relief Requested

**WHEREFORE,** Plaintiff requests that judgment be entered in his favor and against Defendants in an amount sufficient to compensate him for his damages so wrongfully incurred plus attorneys fees.

## COUNT IV
### Violation of Anti-Retaliation Provisions of MCL 37.2701

47.     Plaintiff incorporates by reference paragraphs one (1) through forty-six (46) as if repeated herein verbatim.

48.     Defendants violated the anti-retaliation provisions of MCL 37.2701 of the Michigan Elliott-Larsen Civil Rights Act of 1976 because, after Banks posted his comment complaining that their program constituted an assault on the religious identity of Banks and other members of religious groups with similar beliefs, Defendants retaliated against Banks by summarily terminating him.

49.     As a direct and proximate result of Defendants' willful retaliation, Plaintiff suffered damages, including but not limited to lost wages, mental anguish, and emotional distress, humiliation, shame, anxiety, and other damages.

50.     Pursuant to MCL 37.2701 *et seq.,* MCL 37.2801, and MCL 37.2802, Plaintiff seeks compensatory damages and reasonable attorneys' fees.

### Relief Requested

**WHEREFORE,** Plaintiff requests that judgment be entered in his favor and against Defendants in an amount sufficient to compensate him for his damages so wrongfully incurred plus attorneys' fees.

### **JURY TRIAL**

51.     Plaintiff demands a jury trial on all issues triable to a jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, and tenders the appropriate fees with this Petition.

Respectfully submitted,

RICKARD, DENNEY, GARNO & ASSOC.

Dated: July 9, 2015                     By:  /s/ Timothy W. Denney
                                        TIMOTHY W. DENNEY (P39990)
                                        110 North Saginaw, Suite 1
                                        Lapeer, MI 48446
                                        (810) 664-0750
                                        tdenney@twdpclaw.com

                                        *Counsel for Plaintiff*